So the first case for argument is ETCO Services v. Killian Construction. Good morning, Your Honors. Good morning. May it please the Court, Counsel. My name is Kevin Roberts, and I represent ETCO Services, LLC. I'd like to reserve, Your Honors, five minutes for rebuttal. All right, you can watch your time. I'll also try to help you on that. Thank you, Your Honor. Your Honors, the case before you today arose out of a public works project here in Washington for the construction of residence halls for Central Washington University. The project was let out for bid, and for purposes of the issue that's before the Court, the bid shopping, bid peddling, the bid we're talking about is my client's subcontract bid for plumbing. ETCO Services provided a subcontract bid to Killian Construction. In turn, when Killian Construction bid the project, as required by the bid documents for Central Washington University and Washington law under RCW 393060, they had to list certain scopes of work as to what subcontractor they were going to use for each of those scopes of work. I think we know the background of it, so what we're trying to see is does it fit into these statutory exceptions or is there some other reason? So, would you agree that a mistake was made in terms of the reading of the bid? Absolutely, Your Honor. I believe that that's at the heart of this case, is that what the district court did was take a bid mistake and read that into the statute as an exception for substitution. The court also read into the term bid shopping, and I guess based on the Attorney General opinion in McCandlish, that there has to be some sort of bad dealing, so that the concept that the contractor gets a bid at one level and then uses that to bid for a project and then is able to lower by putting pressure on subcontractors, lower that so that the contractor can get some sort of unfair profit. And so that sort of dealing didn't seem to be happening here. Isn't that right? Well, I would disagree, Your Honor. The statute absolutely requires as a first step that it be in furtherance of bid shopping or bid peddling. What the court looked at, and I believe what you're referring to, is whether there was any benefit gained by the general contractor by the conduct that they engaged in. What the district court did was, instead of looking at the bid that was being shopped or peddled, the plumbing bid, he said, I'm going to look at the two scopes of work inclusive of that, the HVAC work and the controls work, and I'm going to lump those all together, in essence, look at the mistake itself and compare whether the mistake resulted in any gain. So the contractor didn't get any actual benefit. The contractor, in fact, lost money because of its misreading of the ECCO bid. Well, I would disagree that they didn't get a benefit, and the reason is in terms of the substitution law under the contract. The exceptions don't provide for bid mistake, and the legislature made a decision that they were not going to include bid mistake as one of the exceptions for substitution. Other states have done that, for example, New Mexico and California. Well, is it your view that they should have accepted your client's bid for the reduced scope, the plumbing, or that this rather large price that your client suggested, if you were to do the whole nine yards, that they should have accepted that bid? I believe, Judge, that they had a fork in the road when they realized that they made a bid mistake. They could either stand by the bid as bid, including the listing for ECCO as plumbing, to pay the $5 million for the plumbing, or they could go to Central Washington and create or use the existing law on bid mistake within the state of Washington and say, you know what, we just can't do the project for that price. We're out, and request to be released. And so their choice at that time. And as a practical matter, they go there and they use that mistake language that's permissible. We're out. Does that mean that it would go to the next lowest bidder? That's correct, Your Honor. And so where does that leave your client? That would have left my client out in the cold. The whole thing makes no sense. So basically, the upshot of it is that your client's out in the cold already, and you just want them to be out in the cold, too. Not necessarily, Your Honor. I mean, it did happen that my client was not listed by the second general contractor, but that's not always going to be the case. No, but we're talking about this case. We are talking about this case. But the problem with this case is it sets a precedence so that in the future, this statute would be gutted. If you're a general contractor bidding. Well, let me just ask you this. I mean, the Attorney General opinion suggests that the point of the statute is to protect the public treasury. And it sounds like here the public benefited because they ended up paying the lower price, whereas if they had had to take the second bid, it would have been more, more expensive. Actually, this case really illustrates the ills of the bid shopping, and specifically in this case because what happened was J.R.T. went after the bid, and they went shopping. They went to J.R.T. and said, give us a new price. And so we see a revised proposal, and that's the same price that J.R.T. gave all the other general contractors when they bid the project. But then a day later on request, we see a revised proposal that drops the price by $20,000 of J.R.T.'s bid. Then the ultimate subcontract ends up $54,000 less. That's exactly the public policy that this statute's intended to prevent because that money didn't get dropped off of Central Washington's price, and it didn't get dropped off of Killian's price. It came from J.R.T., and we do not know what effect that had on either quality or labor rates, any of those issues, which is why we don't want post-award negotiations like this. So basically you're saying that in the post-award period that there is bid shopping because they're really going back to your client to get a different bid than they got the first time, and they're going to J.R.T. and not taking its original bid but getting a revised bid from J.R.T. So what we don't know is, do you think that's a fact question? Well, I think it's not a fact question only because they've never disputed that they engaged into that shopping conduct. But I do think the way that the district court analyzed this, that at very least it's a question of fact on that issue of bid shopping or bid peddling, and also a question of fact, at very least, on the two exceptions that the court tried to shoehorn this thing into, which is whether or not we refused to enter into a contract and whether or not my client was capable of performing the work, which, by the way, Killian themselves testified in deposition that none of those five exceptions were reasons that they didn't give my client the project. They admitted that it was only because of the bid mistake. There was really no dispute that my client was ready, willing, and able to perform and, in fact, provided a complete scope of three, and then even testified. So let me ask you, do you think it would be bid shopping if we had a situation where your client provided the partial bid, mistake is discovered, now your client provides the full bid? They already have on the table J.R.T.'s full bid, which they looked at, and of course it looked astronomically higher at the time. If they had taken J.R.T.'s full bid straight up, would you have the same problem? I still would, Judge, and the reason is because it's the plumbing side of things. I think that if they decided that they wanted to go forward with the project after their mistake, their option was to go out and find an HVAC price and fill in where they, because, in essence, what they did. Do you read the statute as precluding any post-bid changes? So, in other words, if the contractor has made a bid and then subsequently discovers a mistake, the only solution he has is to withdraw that bid, the general contractor? No. Is that how you read it? No, Your Honor. What changes could be made post-bid? The general contractor could go forward. And, in fact, if you look at just the HVAC and the controls, it would have fallen into one of the exceptions because, in essence, they didn't have an HVAC contractor. In reality, it was no different than them leaving those lines blank. Of course, it would have been nonresponsive, which raises the problem with the district court's ruling in this case. If you accept what the district court did, all any contractor would have to do to comply with the listing statute and move forward in the future, just put down whoever the heck you want. Put down one subcontractor for all of your scopes of work, and then afterwards say, we made a mistake. Now we can shop for whoever we want. You've just described an intentional conduct order, and you've conceded that this was a mistake. I'm assuming it's a mistake, Judge. We don't have any evidence otherwise, and how would you ever have any evidence in the future? If a general contractor built in an intentional mistake, but there's no evidence of it, how would you know? And that's why the reading of the statute doesn't provide for bid mistake as an exception. The legislature made the decision not to put that in there for a reason, and what the district court's opinion has done is to build bid mistake in as an exception, and that's what they're asking you to do, to uphold bid mistake in the state of Washington as an exception. And I think if you go back and look at, you've referenced the attorney general's opinion, if you go back and look at McCandlish, that's a very important case because it is where this statute came from. In McCandlish, what happened was the general contractor said that they mistakenly put in the wrong subcontractor name. I meant to put in the guy that was cheaper. They went up on the listing statute, and the court of appeals said, you know, the statute I've written doesn't prevent substitution, and it doesn't provide a cause of action for a subcontractor that's wrongfully substituted. The legislature came back, and they addressed that, and they addressed it in this statute, and that's where this statute came from. So at that time, when they had a case that was built upon McCandlish, if they had wanted to build bid mistake in, they certainly could have. Do you want to reserve the remaining time? Yes, Your Honor. Thank you. Good morning. Good morning. May it please the court. I'm Jason Smith, and along with Paul Cressman, I represent Killian Construction Company. It's a privilege to be here today. As the court, I believe, is keenly aware, this case is all about a mistake. Everyone agrees that we would not be here today but for a mistake made by Scott Hodson-Piller, who was at the time an estimator for Killian Construction Company. I believe Mr. Roberts has admitted that. ETCO has admitted that throughout the proceedings. They, in fact, called what Mr. Hodson-Piller did a regrettable human error, and that's, in fact, what it is. And where is that error encompassed in RCW 3930-060 exceptions? Judge, a couple of ways to answer that question. First, we don't believe that the exceptions listed within RCW 3930-060, we don't believe that's an exclusive list of reasons that you can substitute a subcontractor on a project. Going beyond that, however... And what leads you to that statutory construction? What leads us to that statutory construction, Your Honor, is that it doesn't say that that's an exclusive list of reasons you can substitute a subcontractor. It doesn't say here are the only reasons that you can substitute a subcontractor. If you go back and you look at McCandlish, what McCandlish says is, hey, we're going to strictly construe this statute. If it doesn't definitively state it, that's McCandlish language, if it doesn't definitively state that this is prohibited, then we're not going to go that direction. Well, here it doesn't definitively state that those are the only reasons to substitute a subcontractor. How do you respond to the argument that if you look at other state contracting statutes, there is a mistake section, and Washington came to this statutory arrangement after the whole McCandlish? Those statutes are very different. The other statutes that have been cited by ETCO in its brief are what we would call pure listing statutes. What that basically means is those statutes say if you list someone, you have to use them, and if you don't use them, then they have a cause of action. This statute is different. This statute goes one step further. 3930.060 says, okay, for a subcontractor to actually have a cause of action against a general contractor, you also have to have bid shopping. The general contractor had to act in furtherance of bid shopping or bid peddling. Now we go to the second part of this, which is troublesome to me. I would see that the case might be different if your client had just taken the JRT bid, which was for the whole package, but instead it did what really has some patina of bid shopping, and that is, okay, well, you gave us this bid, but now in effect they ended up with a lower bid. Why isn't that at least an issue of fact as to bid shopping? It's not an issue of fact, Your Honor, for a couple of reasons. First, there's a reason for the reduction in price in the contract between Killian and JRT. The reason is a corresponding reduction in the scope of work that JRT did. That was testified to by Craig Erickson, who was Killian's project manager on this particular project. That happens all the time. That's not bid shopping. But the reduction came at the outset, correct? It did. The reduction came before a contract was entered into between JRT and Killian. However, when we get to bid shopping, it's not bid shopping because ultimately, of course, Killian paid a higher price. You don't go out and shop for a higher price. That's not what happened here. And it's also not shopping because we didn't go, Killian did not go to JRT and say, look, here's ETCO's bid. It's $5,052,000. You have to beat it. You ultimately did get, Killian did get a lower price for the plumbing work. I think that's ETCO's argument. So you accepted its $5 million bid for plumbing work and then accepted, got from JRT a price that included essentially the same price that included all the other work as well. That's true, Your Honor. But I don't believe that there's anything in the record that absolutely confirms that Killian got a lower price for the plumbing work. But at the end of the day, I don't believe it matters. I don't believe it matters because you have to look at the listing as a whole. And that's the fundamental flaw in ETCO's position in this case. ETCO's entire case rests on this argument that you can parse out the plumbing, that you can just look at the plumbing. You don't have to look at the listing as a whole. Well, at the same time, ETCO calls this a listing statute. They call this a, quote, unquote, listing statute no fewer than seven times in their brief. Well, if this is a listing statute and you're coming to court asking for significant monetary damages based on this listing statute, you can't disregard the listing. The listing is part of the case. So the original Killian bid, if I'm remembering this right, listed ETCO as providing all three different pieces of work. Correct, Your Honor. Which was the mistake. Correct. And so the substitution was for that price, you could get all that work done by JRT or for a slightly higher price. Yeah, for about $400,000 more. Correct. And so if I understand your position, you're saying because the mistake was you thought that ETCO was providing everything for that price, you were really just substituting in someone who could actually do that. We weren't just substituting someone in that could actually do that. We were substituting in the party that was the true low bidder on the job, the party that was listed by virtually every other general contractor that bid this project. JRT was the true low bidder. ETCO wasn't. And that's a big issue in this case. We have ETCO that was not the true low bidder, that everyone agrees should never have been listed and would not have been listed but for this mistake that was not listed by any other general contractor. And now, furthermore, they didn't do any work on the job, so they haven't been damaged, and they're coming to court and they're asking for these significant monetary damages, more than a million dollars, and they didn't do any work. It would be a windfall. If there's a question about it, these cases are often a windfall because if there was bid shopping, then the person who got the bid in the second time around is out and the other person gets the money. So, I mean, that's how these bid listing statutes work. The question I have is you kept emphasizing in your brief that Killian never discussed and nobody really knew what ETCO's bid was in terms of beating it. But one of the JRT people testified that they had the documents on the other subcontractors and they knew exactly what the money was, what the dollars were. So from that question, I wonder why doesn't that raise the bid shopping at least as a factual issue? Because it's still undisputed that it's not shopping, Your Honor. The mere fact that JRT knew that does not mean that Killian acted in a way that would violate the statute in terms of bid shopping. No, but that's a conclusion that a jury could draw, certainly, but why is that a summary judgment determination? This is what's undisputed. This is what we know is undisputed. Killian did not tell JRT the amount of the ETCO bid, and I understand your point that JRT may have known. Well, I mean, but if Killian's talking to them saying, well, now we want to bid, it wasn't like they just said we accept your bid, JRT. Instead, they're basically negotiating between Killian and JRT in this interim period, right? But, again, you don't shop for a higher price. You'd shop for a lower price. Killian paid a higher price, and that's where we have to go back to what is bid shopping? What are the definitions of bid shopping? Of course, we've cited those throughout our brief, and at the end of the day, bid shopping requires a lower price. Bid shopping is when a general contractor goes out and finds another subcontractor that will do the work for a lower price. That didn't happen here. It's undisputed that that didn't happen here. Don't they do the work that ETCO bid for a lower price? We don't know that, Your Honor. We don't know that. But, again, I don't believe it matters. Well, but that is that you're looking at the bulk, the total number of the contract. If we don't know that, is that a factual issue? I don't believe those facts are in the record, but I don't believe it matters because let's go back to how we evaluate whether bid shopping occurred. Do we evaluate it based on the bid that was submitted, or do we evaluate it based on the listing? Of course, we know that Judge Succo from the district court did evaluate it based on the listing. What he said was, you can't parse out this plumbing bid. You can't look at it in a vacuum. And, of course, we agree with that analysis. Again, this is a listing statute. The analysis has to be based on the listing. To go one step further, that analysis is confirmed by the intent and purpose of this statute. The intent and the purpose of the statute, as we know from the Washington Attorney General, as we know from the Washington courts, is that we want to protect the public. We want to protect the taxpayers. We don't want a general contractor submitting a bid based on certain subcontractor bids, entering into a contract, and then going out and finding work for cheaper. That harms the public. The public's not getting the lowest price. Well, that didn't happen here. And so this analysis that you have to base the bid shopping determination on the listing as a whole is completely in line with the purpose of the statute. There's no cost savings in this case. Killian didn't do anything to save costs. Killian suffered financially $400,000 as a result of this mistake. Well, if there's no cost savings to pass on to the public, which there isn't, then the purpose of the statute is not served by the position that ETCO is taking in this case. Now, I would like to move on to what I believe Judge Succo found was a separate and independent basis for summary judgment in this case. Of course, we believe the undisputed facts suggest that there's no bid shopping in this case. But Judge Succo also found that another basis for summary judgment was the fact that ETCO would not enter into a contract with Killian or was unable to perform. Under the statute, those would be permissible reasons for the substitution. I didn't understand that so well because, as the opposing counsel said, ETCO remained willing to enter into the contract that it had given in its bid to you. So to say, well, they won't enter into some other contract that you needed or that you had made up based on Killian's mistake doesn't seem to really address that part of the statute. Your Honor, it goes back to how we analyze this case. Do we analyze it based on the bid or do we analyze it based on the listing? Again, this is a listing statute. When you read the statute, you'll see that it talks about the listed subcontractor. When you read the exceptions, refusal of the listed subcontractor to sign a contract, inability of the listed subcontractor to perform. When you look at this based on the listing, of course, we know that Killian listed ETCO for three scopes of work for $5,052,000. That's the listing. That's what the entire statute's all about is the listing. It's undisputed that ETCO would not enter into a subcontract with Killian for that price for those scopes of work, and that's confirmed throughout the record. You can find that at Supplemental Excerpts of the Record, pages 109, 110, 118, page 246 of the Supplemental Excerpts of the Record. That's an excerpt from Jason Whelan's deposition. He was an estimator for ETCO. What he testified in his deposition is that ETCO could not have done this work as listed, so they wouldn't enter into that contract. They even confirmed it in their briefing to the district court. That's Supplemental Excerpts of the Record, page 90. We would not have entered into a subcontract for those scopes, the three scopes as listed. If that's the case, if they wouldn't enter into that contract as they were listed, that's a separate and independent basis for summary judgment. It's another reason for this court to affirm the district court's granting of summary judgment. They either would not do the work as listed or they could not do the work as listed. Washington has a good faith mistake exception on bids, and we have in Washington a case law to that effect. Why isn't that the remedy? Because of the way the statute reads, it doesn't talk about mistake. Your Honor, I'm not sure I understand. You mean in terms of Killian withdrawing its bid and walking away from this project? Yes. Killian didn't have to do that, and this statute is not tied to kind of the walk away from the bid. Well, but what I'm saying is we know what they did. Nobody likes to walk away from a bid because it just means that you've foregone all that work and you don't get the contract. But we have a system set up where we have a good faith remedy for a mistake, which is a walk away, and we also have what you call listings for when you can do bid substitution. If we were to disagree with you on the listing, whether or not it fell in the listing, why then isn't the remedy the case law precedent as to the walk away? If the question is could Killian have walked away from this bid? No, we know they could have walked away, but why isn't that the remedy that Washington imposes for a mistake if you don't fall in the exception? Because I'm not aware of any authority that says that that's what Killian had to do, and the statute certainly doesn't say that's what Killian had to do. And at the end of the day, again, just to reiterate, there's no bid shopping in this case. Killian didn't get a lower price. And the analysis can stop right there. Killian didn't get a lower price. Without a lower price, there's no bid shopping. You don't shop for a higher price. Thank you. I see my time is up. Thank you. They didn't shop for a higher price. They got a lower price, and we know they got a lower price. Well, his point is that the listing listed the $5 million ETCO bid for all three scopes of work. And then ETCO says we can't do that. That wasn't what we bid. And so what they ended up getting for the three scopes of work was a higher price. And he asked us to focus on the listing as opposed to what ETCO may have bid. The only reason they got a higher price is because they screwed up and didn't have an HVAC contractor. That's the only reason there was a higher price, because they didn't have an HVAC contractor. But you agree that they listed ETCO for all three scopes of work, correct? They did list it. But if you look at the statute, Your Honor, it's not a list shopping statute. The statute says in furtherance of bid shopping. My clients provided a bid for the plumbing. My clients didn't do anything other than that. And so for Killian to try to flip the mistake around and put the burden on my client, when they say that they got nothing out of this, they got a $21 million contract. And they made the decision. And as the saying goes, they didn't have to withdraw. I agree with Mr. Smith on that. But if you're going to dance, you've got to pay the fiddler. And when they made the decision to go forward, they had a bid for plumbing for my client. They listed and certified that they would use my client for the plumbing. Well, what they listed, I understood, was that they would use your client for everything, correct? That's true. And your client could not provide everything. My client could have provided everything. And, in fact, that's another point I want to make. But not for the $5 million. I think it was like a $7 million. Even for the $5 million. If you would look at the excerpts of record at 122, you'll find that Killian was actually the one that caused the problem with my client. My client, Mr. Rude, testified that it may even have been possible for ETCO to perform the work for the amount bid, perform all three scopes for the $5 million. But did they ever submit a bid to that effect? I mean, a piece of paper that says, yeah, we can do this? They did not. And the issue came up because he told Killian, I can talk to you about this. You have to give me access to the Central Washington engineer so that I can work with him to get within the scope. And if you review that section of the testimony, Killian had cut off communication because they had already been shopping back and forth. And we know that the plumbing bid was less, not only because they convinced my client to reduce his plumbing bid by a million dollars, but also it was less by their own JRT testimony from the very first, if you look at excerpts of record 223, he identified that the controls were worth $1.2 million. And that's because everybody had to supply the same controls package. It was coming from one set provider. And so you back $1.2 million off of JRT's bid, and it's already under my client's plumbing. So we know that they got the plumbing for less than my client's original bid, and most likely they wouldn't have went forward if they didn't get it for less than even the reduced bid. That's not in the record necessarily. But if you use the control numbers, the $1.2 million, which is in the record twice, once from JRT and also the ATS bid is in there, we know that that's a fact. And it only makes sense. They wouldn't have been doing all of this shopping, negotiating, cramming people down, pitting people against each other, if it was going to cost them more money. At the end of the day, this mistake is squarely on Killian's shoulder. The statute does not provide an exception for it. And they decided they wanted to dance on the $21 million contract. Well, they have to pay the fiddler, or at least have a jury determine, because there's definitely at very least questions of fact that came out of this. Thank you, Your Honors. Thank you. I'd like to thank both counsel for your arguments this morning. The case of ETCO Services v. Killian Construction is submitted. The next case for argument will be Hamad v. Gates.
judges: Alarcon, McKeown, Ikuta